GEORGE W. DOZIER AND OTHERS v. MATT N. KRMPOTICH.[1]

January 28, 1949.

No. 34,725.

---

[1]Reported in 35 N. W. (2d) 696.

*Leslie S. High,* for appellants.
*John F. Ball,* for respondent.

PETERSON, JUSTICE.

Plaintiffs appeal from the judgment in an action to determine adverse claims adjudging defendant to have an easement of way by prescription across their land.

The legal questions to be decided are:

(1) Whether acquiescence of the owner in the use of an easement of way across his land without more shows that the use, claimed to be adverse, was in fact permissive;

(2) Whether a grant of an easement of way during the prescriptive period (that is, before the statute of limitations has run) by the owner of land to one claiming such easement of way by prescription interrupts the adverse user, if any;

(3) Whether the owner's giving of a mortgage upon land during the prescriptive period interrupts the adverse user of one claiming an easement of way across the land by prescription; and

(4) Whether the purchaser at a mortgage foreclosure sale held after the prescriptive period under a mortgage given during such period takes subject to an easement of way by prescription, where the way and the fact that it was so used were plainly visible.

Plaintiffs own a lot at the southeast corner of Fifth avenue east and East Eighth street in Duluth 35 feet wide facing on Fifth avenue and 100 feet long extending along Eighth street. Defendant owns a life estate in, and his children by his first marriage the fee to, a lot the same size as plaintiffs' adjoining it on the south. There is a dwelling house and a shed on each lot. The sheds are near the east end thereof. Defendant's shed is larger than plaintiffs'. For several years defendant has used his shed as a garage and storeroom. The use of plaintiffs' shed was not shown, except that it was used as a garage at times.

On April 30, 1927, defendant and his family took possession of their property. There was then, as there has been at all times ever since, a plainly visible driveway west of the sheds extending from the south line of defendant's lot across plaintiffs' lot to the south side of Eighth street. Immediately after defendant and his family moved into their house, he installed with the "help" of C. W. Batchman, plaintiffs' predecessor in title and the then owner of the property, a plank over the street curb, and the two of them had a contractor install a heavy sidewalk opposite the driveway, where defendant crossed the curb and sidewalk with his two teams of horses and wagons in gaining access to the driveway, which he used daily for ingress and egress. Defendant paid $2.60 as his share of the cost of the sidewalk.

While defendant and Batchman joined in the installation of the plank over the curb and in causing the sidewalk crossing to be installed, neither said anything about the former's right, if any, to use the driveway. Batchman did not in terms give defendant a license or permission to use it. The next fall after he moved in, defendant commenced to use an automobile truck instead of the teams and wagons, and has done so ever since. He used the driveway daily to drive his truck to the shed in the rear of his premises. Such use of the driveway by defendant was without objection or protest by Batchman, who owned the premises throughout the prescriptive period.

There was evidence showing that Batchman used the driveway, but not the nature and extent thereof. There was no evidence that he ever used the part of the driveway lying south of his shed leading to defendant's lot.

In 1938, Batchman and his wife executed a mortgage upon their property, which was foreclosed in 1945 by the assignee of the mortgage, who bid in the property at the mortgage foreclosure sale. Plaintiffs are assignees of the sheriff's certificate of sale under the mortgage foreclosure. Their title became absolute in 1946 by expiration of the time for redemption.

On April 24, 1942 (after giving the mortgage, before proceedings

for the foreclosure thereof had been commenced, and six days before the prescriptive period had run), Batchman and his wife, for a consideration of one dollar and other consideration, granted to defendant an easement to use the driveway in question as a private one. The true consideration, the circumstances of giving the deed, and the reasons therefor, if any, were not shown.

After plaintiffs acquired title to their lot, a dispute arose between them and defendant concerning destruction of part of a fence on their lot running from the driveway along the street line and also concerning vehicular cutting of the driveway. Plaintiffs demanded that defendant make repairs, not that he cease using their lot altogether. These, defendant made. After the repairs had been made (in 1946), plaintiffs asserted for the first time that defendant had no right to use the driveway.

Plaintiffs in effect contend that of the five essential elements of adverse possession, that it must be hostile, open, actual, continuous, and exclusive (Village of Newport v. Taylor, 225 Minn. 299, 303, 30 N. W. [2d] 588, 591), two thereof—that it must be hostile and continuous—are absent here. They contend that defendant's use of the driveway was not hostile, but on the contrary that it was permissive from its very inception by reason of Batchman's acquiescence therein; that it never became hostile; and that adverse use, if any defendant made thereof, was not continuous for. the prescriptive period, but on the contrary was twice interrupted, viz., once by the giving of the mortgage upon the lot across which the driveway extended, which was later foreclosed, and again by the grant by the former owner to defendant of an easement to the driveway. It is argued that the giving of the mortgage constituted an assertion of the former owner's paramount rights and that the taking of a grant of the easement was in effect an acknowledgment of the former owner's title and an agreement to hold under him. They further contend that as assignees of the purchaser at the mortgage foreclosure sale they took free of the easement claimed by defendant.

■ While statutes of limitation by their terms do not apply to actions involving incorporeal hereditaments such as easements, but

to those for the recovery of land, and while it is said that the right of easement is acquired by prescription and title to land by adverse possession, an adverse user of an easement for the statutory period within which an action for the recovery of land must be brought[2] is, in analogy to title to land thus acquired by adverse possession, evidence of prescriptive right thereto. Prescriptive right rests upon the fiction of a lost grant. Subject only to such differences as are necessarily inherent in the application of the rules to such cases, the same rules of adverse user apply in cases of easements by prescription as in those of title by adverse possession. Romans v. Nadler, 217 Minn. 174, 14 N. W. (2d) 482. Where the claimant of an easement by prescription has shown open, visible, continuous, and unmolested use for the statutory period, inconsistent with the rights of the owner of the servient estate and under circumstances from which his knowledge and acquiescence may be inferred, the use will be presumed to be under claim of right and adverse, so as to place on the owner of the servient estate the burden of rebutting the presumption by evidence that the use was permissive. Schmidt v. Koecher, 196 Minn. 178, 265 N. W. 347; Merrick v. Schleuder, 179 Minn. 228, 228 N. W. 755; Stapf v. Wobbrock, 171 Minn. 358, 214 N. W. 49; Annotation, 170 A. L. R. 778, *et seq.* The very foundation of the establishment of a right to an easement by prescription is the acquiescence by the owner of the servient tenement in the acts relied upon to establish such prescriptive right. 17 Am. Jur., Easements, § 66. It is also the rule that, where the user is permissive on the part of the owner, there can be no prescriptive right, and that, if the user was permissive in its inception, it must become adverse to the knowledge of the owner of the servient estate before any prescriptive rights can arise. Aldrich v. Dunn, 217 Minn. 255, 14 N. W. (2d) 489. It must be apparent, therefore, that "acquiescence" and "permission" as used in this connection are not synonymous. "Acquiescence," regardless of what it might mean otherwise, means,

[2]Under M. S. A. 541.02, an action for the recovery of real estate or possession thereof must be commenced within 15 years after plaintiff's disseizin.

when used in this connection, passive conduct on the part of the owner of the servient estate consisting of failure on his part to assert his paramount rights against the invasion thereof by the adverse user. "Permission" means more than mere acquiescence; it denotes the grant of a permission in fact or a license. Naporra v. Weckwerth, 178 Minn. 203, 226 N. W. 569, 65 A. L. R. 124. See, Dartnell v. Bidwell, 115 Me. 227, 98 A. 743, 5 A. L. R. 1320; Davis v. Wilkinson, 140 Va. 672, 125 S. E. 700. The distinction between "acquiescence" and "permission" was pointed out in the Naporra case (178 Minn. 206, 226 N. W. 571), where we said:

"License or permissive use on the part of the landowner must be distinguished from mere acquiescence. The one is evidence that claimant did not have the drainage right in the absence of the permission; while the other is evidence that he did."

In the case of permissive use, the user is *under* the owner of the servient estate; in a case of acquiescence, it is *against* him. See, Zollinger v. Frank, 110 Utah 514, 175 P. (2d) 714, 170 A. L. R. 770.

As applied here, in answering the question whether defendant's user was adverse, we start with the presumption under the rule stated that it was adverse, unless the facts that the former owner (Batchman) helped defendant lay the plank over the street curb and the two of them paid for the sidewalk over which defendant drove showed a *permissive* use. The presumption, unless rebutted, prevails and controls decision as a rule of law. Donea v. Massachusetts Mut. L. Ins. Co. 220 Minn. 204, 19 N. W. (2d) 377. The question, then, is whether the facts mentioned rebut the presumption. We think that they do not, for the reason that they show only acquiescence, not permission. In the Naporra case, *supra,* we held that the facts that the owner of the servient estate did not object to entry thereon to construct a drainage ditch draining plaintiff's and other lands into a natural ravine thereon and that the owner afterward cleaned the part of the ditch on his land showed mere acquiescence, but not permission. Likewise, in Schuette v. Sutter, 128 Minn. 150, 150 N. W. 622 (cited in the Naporra case,

178 Minn. 205, 226 N. W. 570), we held that the fact that the claimant of an easement to a ditch by prescription and the owner coöperated "in maintaining a ditch" did not show that the user was not adverse. The facts here permitted an inference that defendant's use of the driveway was from its very inception under a claim of right. He sought no permission of Batchman to use it and was granted none. Batchman's helping defendant lay the plank over the curb and their causing part of the sidewalk to be laid at their joint expense were acts of coöperation analogous to those mentioned in the Naporra and Schuette cases, and, like them, simply show acquiescence by the owner in the exercise of adverse rights upon his land by an intruder, but not permission to do so. Permission and license so to do were never mentioned. The conduct of the owners, Batchman's in giving to defendant a deed granting the easement claimed by him and plaintiffs' in not asserting a paramount title and in effect recognizing defendant's right to use the driveway when the dispute arose between them, confirms the fact that defendant's user was one of right.

■ The continuity of adverse possession is not broken by the adverse claimant's taking a written conveyance of the interest claimed by him from parties claiming ownership of the property or some interest therein. Skala v. Lindbeck, 171 Minn. 410, 214 N. W. 271; Dean v. Goddard, 55 Minn. 290, 56 N. W. 1060; City of St. Paul v. C. M. & St. P. Ry. Co. 45 Minn. 387, 48 N. W. 17; 1 Dunnell, Dig. & Supp. § 117. As said in 1 Am. Jur., Adverse Possession, § 184:

"* * * An act of this character admits, and admits only, that the occupant deems it worth while to get rid of the outstanding title and unite it to the one under which he has been holding. It does not prove, and alone it does not even tend to prove, a change in the character of the possession or the recognition of a title paramount."

■ The execution, without more, by the owner of land of a mortgage thereon during the prescriptive period does not interrupt the

user of an adverse claimant. Schafer v. Hauser, 111 Mich. 622, 70 N. W. 136, 66 A. S. R. 403, 35 L. R. A. 835. Hence, the Batchman mortgage in 1938, under which plaintiffs claim, did not interrupt defendant's adverse user of the driveway.

■ It is of course the rule that a purchaser of land at a mortgage foreclosure sale is charged with the rights of parties in possession of the mortgaged land, at least where, as here, they are plainly visible to anyone viewing it, and he purchases subject thereto. 4 Dunnell, Dig. §§ 6365, 6381. It follows that a purchaser of land at a mortgage foreclosure sale purchases subject to the rights of adverse claimants, and he must bring an action to recover possession against such claimants within the statutory period. The rule is thus stated in 2 C. J. S., Adverse Possession, § 152g:

"Where land in the possession of an adverse claimant is purchased by another at a foreclosure sale of the mortgagor's estate, the sale does not interrupt the continuity of the adverse possession of .one not a party to the proceedings, and the purchaser succeeding only to the estate of the mortgagor must bring his action to recover the land within the period of the adverse possession."

Here, if the sale had occurred during the prescriptive period, it would have been a mere paper transaction without actual entry upon the land and would not have interrupted defendant's adverse user. But the sale occurred after the prescriptive period had run (18 years after the adverse user began and three years after the prescriptive period had run) ; consequently it could have no effect upon defendant's prescriptive easement to use the driveway, which had become absolute.

Of course plaintiffs as assignees of the purchaser at the mortgage foreclosure sale could have no greater rights than he, and, as we understand their position, do not claim any.

Affirmed.