# STATE OF MINNESOTA
## IN COURT OF APPEALS
### A23-0619

Robert W. Starbeck, individually, and
As Trustee of the Arthur C. Starbeck Trust
under agreement Dated August 21, 2000,
Appellant,

vs.

Mary Gibson, et al.,
Respondents.

**Filed January 8, 2024**
**Affirmed in part, reversed in part, and remanded**
**Segal, Chief Judge**

Chippewa County District Court
File No. 12-CV-22-376

Douglas D. Kluver, Kluver Law Office and Mediation Center, P.L.L.C., Montevideo, Minnesota (for appellant)

Krystal M. Lynne, J. Richard Stermer, Stermer & Sellner, Chtd., Montevideo, Minnesota (for respondents)

Considered and decided by Cochran, Presiding Judge; Segal, Chief Judge; and Hooten, Judge.[*]

## SYLLABUS

1. On a claim for adverse possession, the boundary-line exemption from the property-tax-payment requirement in Minn. Stat. § 541.02 (2022) requires the existence of genuine confusion over the true location of the boundary line between adjoining properties.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

2.      The uses of land to establish a prescriptive-easement claim are not limited to using another's land for access purposes.

**OPINION**

**SEGAL**, Chief Judge

In this appeal from a grant of partial summary judgment, appellant challenges the dismissal of his complaint alleging title by adverse possession to two portions of respondents' property and an alternate claim for a prescriptive easement.  He argues the district court erred in holding that his adverse-possession claims failed because he never paid property taxes for any portion of respondents' property as provided in Minn. Stat. § 541.02.  He asserts that his claim to one of the portions of respondents' property is exempt from the property-tax-payment requirement because it involved a boundary-line dispute and because he was claiming less than all or substantially all of respondents' property.  Appellant also argues that the district court erred when it dismissed his prescriptive-easement claim for the second portion on the ground that prescriptive easements are limited to using another's land for access; appellant's claim was that he used the land for "recreational and hunting purposes," not access.

We conclude that the district court correctly applied Minn. Stat. § 541.02 and affirm the district court's grant of summary judgment on appellant's adverse-possession claim.  But because we conclude that the types of uses of land to establish a prescriptive-easement

claim are not necessarily limited to access, we reverse and remand to the district court for further proceedings on that claim.[1]

**FACTS**

Appellant Robert W. Starbeck is the trustee of the Arthur C. Starbeck Trust. The trust is the record owner of a parcel of land in western Minnesota (the Starbeck property). The Starbeck property is bordered to the south by a parcel of land owned by respondents Dennis and Mary Gibson and Keith and Vicki Poier (the Gibson/Poier property). Both properties were acquired by the respective parties or their predecessors in 1974. In July 2022, Starbeck initiated this action asserting that he had acquired two portions of the Gibson/Poier property through adverse possession—the "encroached farm property" and the "campground property" (jointly, the disputed area). In his prayer for relief, he sought, in the alternative, a prescriptive easement for the campground property. Starbeck separately recorded a notice of lis pendens against the Gibson/Poier property.[2]

---

[1] Appellant also challenges the district court's denial of his motion for summary judgment seeking dismissal of respondents' counterclaims for slander of title and tortious interference with contract. But this is an appeal from a final partial judgment under Minn. R. Civ. P. 54.02 only on appellant's adverse-possession and prescriptive-easement claims. There is no final judgment on the counterclaims, and therefore those claims are not properly before us in this appeal.

[2] A notice of lis pendens is a notice filed "for record with the county recorder" providing notice of an "action[] in which the title to, or any interest in or lien upon, real property is involved or affected, or is brought in question by either party." Minn. Stat. § 557.02 (2022).

3

The image below depicts the Starbeck property, the Gibson/Poier property, and the disputed area.[3]



As shown in the image, the Starbeck property contains a field, which the Starbeck family has historically used for farming. The encroached farm property is the portion of that field that crosses over onto the Gibson/Poier property, and the campground property is slightly south (or below on the image) of the encroached farm property. The complaint alleges that Starbeck and his predecessors farmed the encroached farm property each year since acquiring the Starbeck property, and that Starbeck constructed and has maintained the campground property consistently since 2000, using it "for his recreational and hunting purposes."

---

[3] The labeled image was attached as an exhibit to the complaint. We have cropped the image to show only the portion relevant to this appeal; it therefore does not depict the full parcels owned by either Starbeck or the Gibsons and Poiers.

The Gibsons and Poiers answered the complaint, contesting Starbeck's claims and asserting counterclaims for slander of title and tortious interference with contract. They claimed that they had a contract to sell the Gibson/Poier property to Chippewa County to create a county park. They alleged that Starbeck was aware of the contract and they were unable to complete the sale due to this litigation and the notice of lis pendens.

The Gibsons and Poiers filed a motion for summary judgment on Starbeck's claims. In a supporting affidavit, they alleged that Starbeck's use of the disputed area was with their permission and that Starbeck never paid any property taxes for the Gibson/Poier property. They also alleged that the campground property has been used by other members of the public as an outdoor recreational and educational site.

Starbeck opposed the motion and moved for summary judgment in his favor on the Gibson/Poier counterclaims. Starbeck argued that it was not relevant whether he paid any property taxes for the property and submitted an affidavit in which he denied receiving permission to use the disputed area. He further asserted in the affidavit that he "controlled access to the campground by requiring all users of the campground to request [his] permission prior to use," exercised exclusive control over the campground property, and "constructed a chain barrier to prevent access to the property and . . . put up 'no trespassing' signs to prevent unauthorized access."

The district court granted summary judgment in favor of the Gibsons and Poiers on Starbeck's complaint and denied Starbeck's motion to dismiss the counterclaims. The district court determined that Starbeck could not maintain his claims for adverse possession because he never paid property taxes on the Gibson/Poier property and was not entitled to

5

a prescriptive easement because his use of the Gibson/Poier property was for a purpose other than accessing his own property. In response to a request from the Gibsons and Poiers, the district court entered partial final judgment on the dismissal of Starbeck's complaint. After initially questioning jurisdiction, we accepted jurisdiction over the appeal from the partial final judgment.

## ISSUES

I.    Did the district court err in granting summary judgment in favor of the Gibsons and Poiers on the adverse-possession claim for the encroached farm property?

II.    Did the district court err in dismissing Starbeck's prescriptive-easement claim for the campground property on the ground that Starbeck did not use the property for access?

## ANALYSIS

We review the grant of summary judgment de novo to determine whether there are any genuine issues of material fact and whether the district court erred in applying the law. *Ruiz v. 1st Fid. Loan Servicing, LLC*, 829 N.W.2d 53, 56 (Minn. 2013). "We view the evidence in the light most favorable to the party against whom summary judgment was granted." *STAR Ctrs., Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 76-77 (Minn. 2002). A genuine issue of material fact exists when there is sufficient evidence that could lead a rational trier of fact to find for the nonmoving party. *DLH, Inc. v. Russ*, 566 N.W.2d 60, 69 (Minn. 1997).

6

**I.     The district court did not err in granting summary judgment in favor of the Gibsons and Poiers on the adverse-possession claim for the encroached farm property.[4]**

To prevail on an adverse-possession claim, a party "must show, by clear and convincing evidence, an actual, open, hostile, continuous, and exclusive possession for the requisite period of time," which is 15 years in Minnesota. *Ganje v. Schuler*, 659 N.W.2d 261, 266 (Minn. App. 2003) (quoting *Ehle v. Prosser*, 197 N.W.2d 458, 462 (Minn. 1972)). When the real estate at issue is "assessed as tracts or parcels separate from other real estate," section 541.02 of the Minnesota Statutes imposes an additional requirement that the claimant have paid property taxes for the claimed real estate subject to certain exemptions. *See St. Paul Park Refin. Co. v. Domeier*, 950 N.W.2d 547, 547-48 (Minn. 2020) (*Domeier II*).

Minnesota Statutes section 541.02 provides:

> No action for the recovery of real estate or the possession thereof shall be maintained unless it appears that the plaintiff, the plaintiff's ancestor, predecessor, or grantor was seized or possessed of the premises in question within 15 years before the beginning of the action.
>
> Such limitations shall not be a bar to an action for the recovery of real estate assessed as tracts or parcels separate from other real estate, unless it appears that the party claiming title by adverse possession or the party's ancestor, predecessor, or grantor, or all of them together, shall have paid taxes on the real estate in question at least five consecutive years of the time

---

[4] As noted above, Starbeck asserted claims of adverse possession for both the encroached farm property and campground property. The district court dismissed both claims but, on appeal, Starbeck's adverse-possession arguments relate only to the encroached farm property, not the campground property. His only argument relating to the campground property is that the district erred in dismissing his claim for a prescriptive easement for use of that property.

during which the party claims these lands to have been occupied adversely.

The provisions of the preceding paragraph shall not apply to actions relating to the boundary line of lands, which boundary lines are established by adverse possession, or to actions concerning lands included between the government or platted line and the line established by such adverse possession, or to lands not assessed for taxation.

Starbeck argues that the property-tax-payment requirement of section 541.02 does not apply to his claim for the encroached farm property for two reasons. First, he argues that his claim involves a boundary-line dispute and that it is therefore exempt from the requirement under paragraph three of the section. And second, he argues that section 541.02 is not applicable because his claim is for less than all or substantially all of the Gibson/Poier property. We address each in turn.

## A.    The boundary-line exemption is not applicable.

Starbeck argues that the boundary-line exemption applies to his claim for the encroached farm property because his adverse-possession claim had ripened by 1989. As such, he contends he has held title to the encroached farm property by operation of law since 1989. He maintains that this case is therefore a boundary-line dispute "with the respondent[s] claiming the boundary of record and the appellant claiming the boundary as a matter of law." But as we conclude in the next section, Starbeck's adverse-possession claim to the encroached farm property never ripened because he paid no property taxes for the Gibson/Poier property as required by section 541.02. Starbeck therefore never achieved title by operation of law, and his argument fails.

8

We also reject Starbeck's claim that the boundary-line exemption applies because it has no support in the record. To qualify as a boundary-line dispute that is exempt from the tax-payment requirement, there must be genuine confusion over the true location of the boundary lines. While there is not much caselaw addressing what constitutes a boundary-line dispute for purposes of the exemption in section 541.02, the caselaw that exists supports the conclusion that it requires genuine confusion between the parties concerning a property line. For example, in *Ganje*, we held that the boundary-line exemption in section 541.02 was applicable based on evidence that the disputed area involved a zig-zagged boundary line featuring a fence line and a roadway and that the respondent had walked the area with the prior owners of the appellant's parcel "in an attempt to determine where the boundary line lay between the properties." 659 N.W.2d at 270.

Other boundary-line-exemption cases cited by the supreme court in *Domeier II*, 950 N.W.2d at 551, similarly involved uncertainty over the exact location of the property line. *See Mellenthin v. Brantman*, 1 N.W.2d 141, 143 (Minn. 1941) (stating that "[a]ll [parties] concerned" thought that the adverse claimant's predecessor in interest had purchased land up "to the fence," and the parties acted as if the fence was the boundary line between the properties); *Skala v. Lindbeck*, 214 N.W. 271, 272 (Minn. 1927) (observing that "both parties believed [a fence] was located on the true boundary line between their respective holdings" until a survey revealed a different boundary); *Fredericksen v. Henke*, 209 N.W. 257, 258-59 (Minn. 1926) (concluding that a decades-old fence built by a previous owner resulted in a party mistakenly claiming that the fence was the proper boundary line); *Kelley v. Green*, 170 N.W. 922, 923-24 (Minn. 1919) (noting that the parties and their

9

predecessors treated a row of trees as the boundary line for approximately 26 years before discovering that the row of trees might not be the actual boundary).

In this case, there is no indication that the parties were confused about the location of the boundary lines between the Starbeck and Gibson/Poier properties. Starbeck never claimed that he believed the encroached farm property was within the boundary lines of his property. To the contrary, the allegations in the complaint and in Starbeck's affidavit demonstrate that Starbeck was fully aware of the actual boundary lines and that he claims to have possessed the disputed area "in a manner that was, for no less than 15 years, actual, open, hostile, continuous, and exclusive." As the district court observed, this case "involves two separate properties with precise legal descriptions and definite property lines," and "[t]he parties argued this case with these boundary lines in mind." In the absence of evidence supporting the existence of genuine confusion over the boundary line between the two properties, the district court correctly concluded, as a matter of law, that the boundary-line exemption was not applicable.

**B.**      **In the absence of a statutory exemption, payment of property taxes is required for adverse-possession claims involving *any* portion of a separately assessed parcel.**

In the alternative, Starbeck argues that the property-tax-payment requirement does not apply to his claim for the encroached farm property because he "was not claiming substantially all of [the Gibson/Poier] property." Starbeck cites as his authority our decision in *State v. Grubb*, which held that the tax-payment requirement applies only "to actions where the disseizor claims all or substantially all of an assessed tract or parcel." 433 N.W.2d 915, 920 (Minn. App. 1988), *rev. denied* (Minn. Feb. 22, 1989). The supreme

10

court in *Domeier II*, however, rejected this holding. In *Domeier II*, the supreme court disagreed "with the court of appeals' approach as set out in *Grubb*." 950 N.W.2d at 552. The supreme court held that, in cases where there is no boundary-line dispute, "[a] claim to *any* portion of a separately assessed parcel requires tax payment." *Id.*

Because the property-tax-payment requirement of section 541.02 applies, and Starbeck paid no property taxes, the district court did not err in granting summary judgment in favor of the Gibsons and Poiers on the adverse-possession claim for the encroached farm property.

## II. The uses of land to establish a prescriptive-easement claim are not limited to using another's land for access purposes.

The only reference in Starbeck's complaint to a claim for a prescriptive easement appears in paragraph two of the prayer for relief where he seeks a judgment:

> Declaring that Robert W. Starbeck, individually is the owner of the Campground Property, free of any estate, right, title, lien, or interest by the defendants.
> OR IN THE ALTERNATIVE
> Declaring that Robert W. Starbeck, individually, holds a prescriptive easement over the Campground Property.

The district court granted summary judgment on Starbeck's prescriptive-easement claim regarding the campground property, concluding that such claims are limited to claims for a right of use for access purposes and, because Starbeck does not use the campground property for that purpose, his claim for a prescriptive easement fails. Starbeck challenges the district court's conclusion, arguing that a prescriptive-easement claim is not so limited.

The primary difference between a claim for a prescriptive easement and adverse possession is that a prescriptive easement grants only a right to nonexclusive use of a

11

portion of another's property, not to a right of exclusive possession or title to that property. *Hebert v. City of Fifty Lakes*, 744 N.W.2d 226, 231 n.3 (Minn. 2008); *see also Block v. Sexton*, 577 N.W.2d 521, 526 (Minn. App. 1998) ("An easement does not give title to the land upon which it is imposed, nor does it exclude use by the landowner or the public."). "[S]ubject to such differences as are necessarily inherent in the application of the rules in such cases," the elements of proof required to establish a prescriptive easement are otherwise the same as those necessary to establish adverse possession. *Rogers v. Moore*, 603 N.W.2d 650, 657 (Minn. 1999) (quotation omitted). "The scope of a prescriptive easement is 'measured and defined by the use made of the land giving rise to the easement.'" *Block*, 577 N.W.2d at 525-26 (quoting *Romans v. Nadler*, 14 N.W.2d 482, 486 (Minn. 1944)).

As the parties note, most of the cases involving claims for prescriptive easements concern the use of a driveway or access road owned by another to access one's own property. *See, e.g.*, *Boldt v. Roth*, 618 N.W.2d 393, 396 (Minn. 2000); *Rogers*, 603 N.W.2d at 654; *Nordin v. Kuno*, 287 N.W.2d 923, 924 (Minn. 1980); *Oliver v. State ex rel. Comm'r of Transp.*, 760 N.W.2d 912, 918 (Minn. App. 2009), *rev. granted* (Minn. App. Apr. 29, 2009), *and appeal dismissed* (Minn. Nov. 16, 2009); *Heuer v. County of Aitkin*, 645 N.W.2d 753, 755-56 (Minn. App. 2002). But none of these cases state that a prescriptive easement may *only* be established for such a use.

To the contrary, there are other cases involving prescriptive easements for uses *other* than access purposes. In *Romans*, the supreme court determined that a party was entitled to a prescriptive easement "to have the eaves and gutters of the[ir] house and the[ir] garage

[to] project and to drip" onto the land of another. 14 N.W.2d at 487. In *Barth v. Stenwick*, this court reversed the grant of summary judgment against a township on its claim that the public had acquired a prescriptive easement to use a disputed portion of a beach for recreational purposes. 761 N.W.2d 502, 512 (Minn. App. 2009). In addition, this court has, in a nonprecedential opinion we cite for its persuasive value, affirmed the grant of a prescriptive easement to individuals to use motorized vehicles for recreational purposes on certain trails owned by another where the use of such vehicles was otherwise prohibited. *See Anderson v. State,* No. A06-1673, 2007 WL 2472359, at *1, *4-6 (Minn. App. Sept. 4, 2007), *rev. denied* (Minn. Nov. 13, 2007).

We conclude that the uses of land to establish a prescriptive-easement claim are not limited to using another's land for access purposes. The district court thus erred in dismissing Starbeck's prescriptive-easement claim for use of the campground property on the ground that his use of that property was for "recreational and hunting purposes," not access. The Gibsons and Poiers assert other grounds for summary judgment on Starbeck's prescriptive-easement claim but, because these were not addressed by the district court, we decline to address them for the first time on appeal. We therefore reverse the grant of summary judgment on Starbeck's prescriptive-easement claim for the campground property and remand that claim to the district court for further proceedings. Nothing in this opinion, however, is intended to limit the district court's consideration of any alternative grounds for summary disposition of the prescriptive-easement claim.

**DECISION**

For the foregoing reasons, we affirm in part, reverse in part, and remand to the district court for further proceedings. We affirm the district court's summary-judgment dismissal of the adverse-possession claim to the encroached farm property because the district court properly concluded that the boundary-line exemption to the property-tax-payment requirement does not apply, and it is undisputed that Starbeck did not pay property taxes for any portion of the Gibson/Poier property. But we reverse and remand for further proceedings on the prescriptive-easement claim for the campground property because the district court erred in determining that Starbeck could not maintain a claim for a prescriptive-easement on the ground that he did not use the campground property to access his own property.

**Affirmed in part, reversed in part, and remanded.**